UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA/ SEATTLE

| | |
|---|---|
| JACOB F.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Case No. 2:22-cv-01084<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

　　　　Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 5. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 2, Complaint.

　　　　The Court is reviewing the decision of the Social Security Administration for the second time. Plaintiff filed applications for SSI and DIB on April 26, 2016, which were denied by the Commissioner on initial review. AR 88. After an ALJ determined plaintiff was not disabled between May 20, 2015 – February 25, 2018, but was disabled starting on February 25, 2018 -- his 50th birthday -- Magistrate Judge J. Richard Creatura found the ALJ erred as to the portion of the decision finding non-disability, and reversed and remanded for additional proceedings. AR 1232-1241.

1

On remand, the ALJ conducted a hearing on March 2, 2022. AR 1159-1196. The ALJ determined again that plaintiff was not disabled before February 25, 2018. AR 1150. For the reasons stated below, the Court finds the ALJ committed harmful error and the case must be remanded for further proceedings.

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

In this case, the ALJ found the following severe impairments: "ankylosing spondylitis, degenerative disc disease of the cervical spine, osteoarthritis of the bilateral knee, fibromyalgia, obesity, dermatitis and depression." AR 1137.

Plaintiff asserts that the ALJ should have re-opened previous applications that plaintiff filed on May 29, 2013. Dkt. 12, Plaintiff's Opening Brief, at 3; see AR 71-79 (ALJ decision dated 5-19-2015). Yet the record shows the ALJ who conducted the hearing on

March 2, 2022 in the present case considered the entire period, including the period that was reviewed in the 2013 applications.

The first ALJ who conducted a hearing on plaintiff's 2016 application for DIB and SSI benefits determined that plaintiff was disabled as of February 25, 2018 but not prior; that ALJ relied on a date of onset of May 20, 2015 (the date of onset originally asserted by plaintiff was December 12, 2011 but it was amended during the hearing). AR 1206. The ALJ found that plaintiff was disabled from the date he turned 50-years-old, February 25, 2018. AR 1212. This finding was not overturned by the order of Judge Creatura, and it was affirmed by the Appeals Council. AR 1232-1241; see also, AR 1251 (Supplemental Security Income, Notice of Award).

Therefore, if the ALJ in the present case had refused to re-open the previous applications, the Court would anticipate the scope of review as being the time period reviewed by the previous ALJ (who issued the 2018 opinion finding he was not disabled before February 25, 2018) -- between the amended date of onset – May 20, 2015 and February 25, 2018. *See,* AR 1134; Dkt. 12, Plaintiff's Opening Brief, at 3. Yet, the ALJ who conducted the March 2, 2022 remand hearing found plaintiff was not disabled between December 12, 2011 and February 25, 2018 (plaintiff was disabled between February 25, 2018 and the date of the ALJ's ruling, because the Appeals Council affirmed the disability finding). AR 1150.

Apparently the ALJ in the present case re-opened plaintiff's previous applications and considered testimony and evidence concerning the period beginning with December 12, 2011, which was close to the date of onset that was alleged in the previous applications. AR 1134-1150; see AR 71 (ALJ decision in 2015 identifies

alleged date of onset as December 16, 2011). Plaintiff's argument that the ALJ refused to re-open and consider the entire period is not supported by the record. *See,* AR 1146 ("I have considered this prior decision in accordance with *Chavez* and AR 97-4(9). The evidence of record includes additional medical evidence for the relevant time period"). Even if the ALJ did not formally re-open the 2013 applications, the entire period of December 12, 2011 through February 25, 2018 was reviewed and therefore any error would be harmless.

## DISCUSSION

### A. RFC Determination

Plaintiff argues the ALJ committed harmful error by deciding on a residual functional capacity (RFC) without including certain functional limitations. Plaintiff contends the ALJ should have found that plaintiff's statements about symptoms, and about drug side effects, should not have been discounted. Dkt. 12, Plaintiff's Opening Brief, at 8-11. In addition, plaintiff asserts that the ALJ erroneously discounted the medical opinion evidence of Dr. Thorpe and Dr. Martin. Dkt. 12 at 6-11.

According to the RFC, plaintiff can perform sedentary work. AR 1141. Plaintiff would have the following limitations as exceptions to sedentary work: "(1) can occasionally climb stairs and ramps; (2) can never climb ladders or scaffolds; (3) can occasionally stoop, kneel, crouch and crawl; (4) can occasionally reach overhead and frequently reach in all other directions with the bilateral upper extremities; (5) can have occasional exposure to extreme cold; and (6) can have occasional exposure to hazards such as unprotected heights and moving mechanical parts." *Id.*

Also, the ALJ found that plaintiff had the residual functional capacity to "understand, remember, and carry out simple instructions"; he could also "have occasional interaction with supervisors, coworkers and the public". *Id.* In addition, the ALJ determined plaintiff would be able to "only make simple, work-related decisions", and would be able to "only tolerate occasional change in work location. . .and cannot work at a strict production rate such as the rate required to work on an assembly line. *Id.*

**1.   Whether the ALJ erred in discounting the medical opinions of Dr. Thorpe and Dr. Martin**

Plaintiff asserts that Dr. Thorpe's opinion and Dr. Martin's opinion should not have been discounted by the ALJ. Dkt. 12, Opening Brief, at 6-8. The defendant argues that the ALJ included more restrictive limitations than were opined by Dr. Martin, and therefore any error would be harmless. Dkt. 19, Defendant's Brief at 8. The record shows Dr. Martin found plaintiff would be able to work at the light exertional level. AR 133-135, 150-152. The ALJ found plaintiff would have the ability to perform sedentary work – a more restrictive set of limitations than would apply to light exertional level work. This would be harmless error -- it is inconsequential to the non-disability determination. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

With respect to Dr. Thorpe, plaintiff argues that Dr. Thorpe's opinion was supported by the longitudinal evidence. Dkt. 12, at 6-8. The defendant argues that Dr. Thorpe had not been a treating physician; the check-box form did not provide sufficient explanation; and Dr. Thorpe's opinion was inconsistent with the longitudinal record. Dkt. 19 at 9-10.

Plaintiff filed their applications for Title II and Title XVI benefits prior to March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and

5

1  convincing" reasons to reject the uncontradicted opinions of an examining doctor, and
2  "specific and legitimate" reasons to reject the contradicted opinions of an examining
3  doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When an examining
4  physician's opinion is contradicted, the opinion can be rejected "for specific and
5  legitimate reasons that are supported by substantial evidence in the record." *Id.*
6  (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722
7  F.2d 499, 502 (9th Cir. 1983)).

8      An examining physician's opinion is "entitled to greater weight than the opinion of
9  a non-examining physician." *Lester v. Chater*, at 830 (citations omitted); *see also* 20
10 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the opinion of a source
11 who has examined you than to the opinion of a source who has not examined you"). A
12 non-examining physician's or psychologist's opinion may not constitute substantial
13 evidence by itself sufficient to justify the rejection of an opinion by an examining
14 physician or psychologist. *Lester,* at 831 (citations omitted). However, "it may constitute
15 substantial evidence when it is consistent with other independent evidence in the
16 record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes,
17 supra*, 881 F.2d at 752).

18     In this case, Dr. Thorpe is an examining physician who did not treat plaintiff but
19 evaluated plaintiff on January 29, 2016. Dr. Thorpe's evaluation notes that plaintiff plays
20 in a band, sings and plays guitar; plaintiff has anxiety, withdraws, sleeps all the time,
21 has no energy, and has chronic long-term pain; Dr. Thorpe observed that plaintiff
22 described his situation this way: "I got depression to where I just don't want to live
23 anymore" AR 340.

24
25

Dr. Thorpe indicated that plaintiff was diagnosed (AR 340) with cannabis dependence disorder, daily use; pain disorder with both psychological factors and general medical condition; and major depressive disorder, recurrent, with suicidal ideation.

Regarding plaintiff's functional limitations (AR 341), Dr. Thorpe found the following were severe limitations: (1) "work safely, aware of normal hazards, take precautions"; (2) "communicate/perform – work setting"; (3) "do normal work week w/o symptoms interruption"; (4) "set realistic goals/plan independently". Dr. Thorpe found the following were marked limitations: (1) "perform w/schedule regular attendance, punctual"; (2) "perform routine tasks w/out special supervision"; (3) "adapt to changes in routine work". In addition, Dr. Thorpe found the following moderate functional limitations: (1) "COMPLEX instructions – understand, carry out, recall, persist"; and (2) "ask simple questions/request assistance".

These findings were discounted by the ALJ based on (AR 1146-1147):

- No treating history at the time of the evaluation on January 29, 2016;
- Dr. Thorpe used a check-box form and did not provide sufficient explanation or analysis;
- Dr. Thorpe's opinion is inconsistent with the other medical evidence, and is also inconsistent with Dr. Thorpe's own evaluation notes.

With respect to the ALJ's first reason, the fact the Dr. Thorpe examined plaintiff once is not, in and of itself, a specific, legitimate reason for discounting the opinion. An examining doctor, by definition, does not have a treating relationship with a claimant and usually only examines the claimant one time. *See* 20 C.F.R. § 404.1527. "When

considering an examining physician's opinion . . . it is the quality, not the quantity of the examination that is important. Discrediting an opinion because the examining doctor only saw claimant one time would effectively discredit most, if not all, examining doctor opinions." *Yeakey v. Colvin*, 2014 WL 3767410 at *6 (W.D. Wash. July 31, 2014). Therefore, the ALJ improperly rejected Dr. Thorpe's opinion because it was based on a one-time examination rather than a treating physician relationship.

Regarding the consistency with the medical record leading up to the date of Dr. Thorpe's assessment, the longitudinal record shows that plaintiff was seen by mental health professionals at SeaMar clinic for depression during 2013-2015 -- before Dr. Thorpe's evaluation on January 29, 2016. AR 357-370, 377-448.

At a SeaMar intake assessment on May 8, 2013, plaintiff was found to have marked impairments in the ability to manage daily activities. AR 432. The mental status examination at intake showed depression, sadness, anger, irritability, and hostility. AR 430-431. Plaintiff was found to be a low suicide risk, but he was taking psychotropic medications and was diagnosed with a major depressive disorder, recurrent, moderate. AR 434-439.  The treatment recommendation was individual counseling and medication therapy. AR 438. During 2013-2015, plaintiff was having psychotherapy appointments more than once a month, at times improving, at times neither improving nor deteriorating, and at other times he regressed. *See, e.g.,* AR 367 (plaintiff felt suicidal and the mental health professional helped him make a crisis plan), AR 370 (plaintiff regressed in early 2015); AR 357, 440-448 (some improvement in late 2015, medicated with lamictal as noted on 10-12-2015); AR 804-805 (plaintiff's dosage of lorazepam is doubled in June 2015 to address anxiety). The record shows plaintiff was being treated

for depression during 2013-2015, and his symptoms were consistent with what Dr. Thorpe found in January 2016; therefore the ALJ's first reason is not supported by the record.

With respect to whether Dr. Thorpe's assessment is inconsistent with other medical evidence in the record, and whether it is consistent with Dr. Thorpe's own findings, the evaluation of the non-examining consulting physicians is different from Dr. Thorpe's assessment. See, AR 101-102 (Dr. Lewis); AR 132-137 (Dr. Postovoit). Yet independent evidence from before and after Dr. Thorpe's assessment shows that plaintiff suffered from recurring depression and received frequent psychiatric treatment with medications, and also frequent psychotherapy. See e.g., AR 344-345 (treatment notes dated 5-11-2016, and 5-27-2016, showing depression and anxiety improving but then getting worse), AR 468 (documented Sea Mar appointments for depression and anxiety between June and October, 2016). There were periods of improvement, periods of no change, and periods of regression. Throughout treatment, plaintiff's symptoms were consistently expressed -- he wanted to avoid interacting with other persons, and his psychological symptoms made it difficult to perform any tasks of daily living because of fatigue, hopelessness, and of wanting to die.

A check-box form may be used by medical professionals, and should only be discounted if the form is unsupported, or unexplained and not clear. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014)).

The marks on the check-box form are not the only record that Dr. Thorpe made of plaintiff's evaluation. See AR 341. Dr. Thorpe conducted a clinical interview, and noted the answers plaintiff gave concerning topics that were covered with plaintiff during

9

1  the evaluation. AR 340. Dr. Thorpe also conducted a mental status examination. AR
2  342. This is not simply a check-box evaluation. The ALJ's decision on this point is not
3  supported by the record.
4      The defendant asserts that the Court should affirm because Dr. Lewis and Dr.
5  Postovoit's opinions would constitute substantial evidence. Dkt. 19 at 8. But, the opinion
6  of a non-treating or non-examining physician may serve as substantial evidence only if
7  "the opinions are consistent with independent clinical findings or other evidence in the
8  record". *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002). In this case, the
9  longitudinal record shows that plaintiff's symptoms were persistent and more severe
10 than opined by Dr. Lewis and Dr. Postovoit. Therefore, the ALJ erred in relying on their
11 opinions while rejecting Dr. Thorpe's.
12      Harmless error
13      An error that is inconsequential to the non-disability determination is harmless.
14 *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors
15 of the ALJ result in a residual functional capacity (RFC) that does not include relevant
16 work-related limitations, the RFC is deficient and the error is not harmless. *Id* at 1052,
17 1054*; see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir.
18 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,*
19 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).In this case, the error is
20 consequential. When the RFC is incomplete, the hypothetical question presented to the
21 vocational expert at step five is also incomplete, "and therefore the ALJ's reliance on the
22 vocational expert's answers [is] improper." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir.
23 2012).

Plaintiff's RFC does not contain limitations that are consistent with the level of limitations that Dr. Thorpe opined. Moreover, the longitudinal record supports Dr. Thorpe's opined limitations and therefore, the ALJ should have asked questions of the Vocational Expert (V.E.) to include more onerous psychological and psychiatric limitations.

**2. Plaintiff's statements regarding subjective symptoms**

In assessing plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

"Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Treatment records cannot be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

In this case, plaintiff testified that he had severe depression and wanted only to sleep and isolate. AR 1168. He stated that he wanted to die, and he suffered anxiety attacks, during which he would shake uncontrollably, and would lose control of his arms. AR 1177, 1178. Plaintiff asserted that he was angry with people, did not want to deal with them, and isolated so as to avoid interactions. AR 1168, 1178-1179.

The Court has determined that the ALJ erred by improperly evaluating the medical evidence from Dr. Thorpe, and plaintiff's statements about his mental health symptoms are supported by the medical record; therefore the ALJ's decision that plaintiff was not credible was harmful error in formulating the RFC.

The remaining issues raised by plaintiff with respect to the evaluation of plaintiff's subjective symptom testimony, and the evaluation of the occupations relied on by the ALJ at step five, will not be addressed in this decision, because on remand, the Commissioner will be conducting a new hearing and these additional issues may be re-evaluated, or they may become moot.

B. **Whether the Court Should Reverse With a Direction to Award Benefits.**

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

(9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 80 F.3d at 1045.

Here, plaintiff asks the Court to remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony. Dkt. 12, at 15-16. The Court has found errors in the ALJ's evaluation of the medical opinion evidence, and in the ALJ's assessment of plaintiff's credibility.

Based on a review of the record, the Court concludes the record is not fully developed with respect to the date of onset. *See Diedrich v. Berryhill,* 874 F.3d 634, 639-640 (9th Cir. 2017) (in a challenging case, the ALJ may be required to have a medical advisor for purposes of determining the date of onset). There is a lack of clarity in the record about the date of onset – on remand the medical evidence of plaintiff's mental health condition before Dr. Thorpe's assessment in 2016 must be reviewed to

determine the precise date of onset; in this situation, the ALJ may be required to call on a medical advisor to determine when a plaintiff's mental health disability began. *Id.; see also, Wellington v. Berryhill,* 878 F.3d 867, 873-875 (9th Cir. 2017). And, there is still a question about the precise functional limitations that should be stated in plaintiff's RFC. *See, Treichler, v. Cmm'r,* 775 F.3d 1090, 1103-1105 (9th Cir. 2014) (Court does not use the credit-as-true analysis unless a remand would serve no useful purpose, because the record is free of conflicts and ambiguity).

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings.

The Commissioner is directed to re-evaluate the medical evidence concerning plaintiff's mental health conditions to determine date of onset, and also to determine the RFC.

Plaintiff should be given the opportunity to present any additional medical evidence, and testimony from plaintiff, concerning plaintiff's conditions and the functional limitations relating to those conditions, and any evidence of drug side effects, that may be relevant to the period between the alleged date of onset -- December 12, 2011 and February 25, 2018. The ALJ in the 2018 decision found that plaintiff was disabled from the date he turned 50-years-old, February 25, 2018. AR 1212. This finding was not overturned by the order of Judge Creatura, and it was affirmed by the Appeals Council. AR 1, 24-36, 1232-1241.

The Commissioner is directed to conduct a hearing, allow for new evidence to be presented, consider whether a medical advisor is necessary for evaluating and deciding the date of onset, and re-evaluate the mental health evidence as well any additional testimony from plaintiff. The five-step analysis should then be conducted for the period between December 12, 2011 and February 25, 2018.

Dated this 17th day of April, 2023

Theresa L. Fricke
United States Magistrate Judge